[Cite as *Westlake v. Y.O.*, 2019-Ohio-2432.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF WESTLAKE, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 107226 |
| v. | : | |
| Y.O., | : | |
| Defendant-Appellant. | : | |

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 20, 2019

Criminal Appeal from the Rocky River Municipal Court
Case No. 17-CRB-2896

### *Appearances:*

Michael P. Maloney, City of Westlake Law Director, and John F. Corrigan, Assistant City of Westlake Prosecutor, *for appellee.*

Kandee S. Robinson, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Y.O., appeals his conviction for domestic violence. For the reasons that follow, we affirm.

{¶ 2} In December 2017, Y.O. was charged with one count of domestic violence in violation of R.C. 2929.25(A), a first-degree misdemeanor. The case proceeded to a jury trial where the following evidence was presented.

{¶ 3} Y.O. and his ex-wife, A.O., operated under a shared parenting agreement regarding their ten-year-old son, D.O., with Y.O. as the residential-custodial parent. The shared parenting agreement provided for alternating weekly visitation. On Monday, December 5, 2017, D.O. was scheduled to begin visitation with A.O. following school; however, she was out of town on business until later that evening. It was agreed that A.O. would pick D.O. up from Y.O.'s home after her flight home that night around 10:30 p.m., which was already beyond D.O.'s normal 9:00 p.m. school-night bedtime. When A.O. was not at the house at 10:30 p.m., Y.O. sent D.O. to bed. D.O. testified that Y.O. was supposed to wake him when his mom arrived.

{¶ 4} Y.O. testified that around 11:15 p.m., A.O. sent a text message to D.O.'s cell phone, which was charging in Y.O.'s bedroom, stating that her flight had just landed, and questioning if she should still pick him up. Y.O. stated that he did not reply because D.O. was already in bed, and because it was a school night, it was too late to wake him. Around 2:00 a.m., D.O. woke Y.O., who was sleeping on the couch, inquiring about his mom. When Y.O. told his son that she had sent a text message, D.O. became angry, started crying, and asked why Y.O. did not wake him. Y.O. told D.O. that it was too late. According to D.O., Y.O. told him "that no one was that stupid to pick up a kid at 11:00 p.m." Y.O. denied that he made that statement to

D.O. or that he called A.O. stupid. Y.O. testified that he told D.O. that "I would be a stupid parent to wake [him] up."

{¶ 5} Y.O. ordered D.O. to go back to his room and go to bed. D.O. testified that he cried himself back to sleep. The following morning, D.O. did not get ready for school. D.O. stated that he was upset and mad that his dad did not wake him when his mom texted. Y.O. came into D.O.'s room and noticed that his son was not getting ready, but just sulking in front of his closet. D.O. became argumentative with Y.O. about why he did not wake him. According to D.O., Y.O. repeatedly stated that "no one is that stupid," and when D.O. argued with him that his mom was not stupid, Y.O. grabbed D.O. by his face. D.O. stated that he was initially able to deflect his dad's movements toward his face. D.O. testified that without warning, Y.O. slapped him on the left side of the face five times, the last time striking him in the eye area.

{¶ 6} Y.O. denied that he slapped D.O. He testified that as D.O. was arguing with him, Y.O. grabbed him by the shoulders, lifted up his head, and gave him his "marching orders." Y.O. stated that when D.O. became argumentative and continued doing so for "three or four minutes," he spanked D.O. on his bottom three or four times. Y.O. stated that after he spanked him, D.O. "went rigid and stopped." D.O. denied that Y.O. spanked him.

{¶ 7} Both D.O. and Y.O. testified that following the physical altercation, D.O. got ready for school and ate breakfast. Y.O. testified that D.O. did not say anything during this time, and did not argue with him when Y.O. told him to change his shirt. D.O. left home and rode the bus to school.

{¶ 8} When he arrived at school, D.O. asked the school secretary, Megan Moutous, if he could get some ice for his eye, which was hurting from when Y.O. slapped him in the face. Moutous testified that she asked him how he hurt his eye, and that D.O. told her that his father had slapped him three times. According to Moutous, D.O.'s left eye area was noticeably swollen and slightly red, but not bruised. She stated that she did not take any photographs of D.O.'s injury, but discussed the disclosure with Carrie Brickman, the school's counselor.

{¶ 9} Brickman testified that she interviewed D.O. that day regarding the injury to his eye. She stated that D.O. told her that his dad had slapped him in the face five times. According to Brickman, D.O.'s eye was a little puffy but not bruised. She called A.O. and advised her about D.O.'s injury and allegation. According to Brickman, A.O. told her that she had a lawyer and they were "building a case for her to have custody." Brickman also testified that A.O. told her the incident was "nothing new" and that they had gone to court over something similar in March. Brickman, as a mandatory reporter of abuse, also contacted the Cuyahoga County Department of Children and Family Services ("CCDCFS"). She testified that she later received a letter from CCDCFS that no investigation would be conducted regarding the allegation.

{¶ 10} A.O. testified that she picked up D.O. at the end of the school day and took him to the hospital later that evening. She explained that she did not immediately report the incident to police because she believed that the school or CCDCFS had already reported the incident, but because D.O. did not want to go back

to his father's house, she needed to make a report and get a protection order. She also explained that she did not take pictures of D.O.'s injury but saw that his eye was swollen. A.O. also testified about a prior incident from "the last instance of physical abuse." She stated that the use of physical discipline should be "[on] the butt," and she had told Y.O. that he was not allowed to use physical discipline on D.O. "in the face" — "he's not allowed to hit him in the face."

{¶ 11} Emily Malley, a social worker at MetroHealth Medical Center testified that she spoke with D.O. and his mom on the evening of December 5. According to Malley, D.O.'s left eye was more swollen than the other eye but she could not recall if there was any discoloration; she did not take any photographs. She stated that D.O. told her that his father slapped him five times after his father called D.O.'s mom names. Malley stated that A.O. told her about visitation and custody. D.O. testified that his mom and stepdad told him that they were going to get custody of him. He admitted that if Y.O. hit him, it would help his mom get custody.

{¶ 12} Jason Carman, a Westlake police officer, testified that he took the domestic violence complaint from A.O. on December 11, 2017. He stated that after receiving the report, he called Y.O. and asked him to come to the station for an interview. During the interview, Y.O. gave Officer Carman a written statement, which the officer read aloud at trial. In the statement, Y.O. stated that he grabbed D.O.'s shoulders to hold him still, and denied that he slapped D.O. in the face. Y.O., however, did not disclose in this statement that he spanked D.O.

{¶ 13} Y.O. testified that he had no knowledge of D.O.'s injuries or allegations; he was never notified by the school. After D.O. did not arrive for his weekly visitation the following week, Y.O. went to the school. When he received the call from Officer Carman, who told him about the allegations, Y.O. stated that "this is the same crap that she pulled the last time." He testified that there was no agreement between him and A.O. about discipline. He stated that at times, A.O. has asked him to help her with disciplining D.O. Y.O. stated that he used physical discipline that day because D.O. was talking back, and spanking him was the right thing to do.

{¶ 14} The trial court denied Y.O.'s Crim.R. 29 motions for acquittal. The jury found Y.O. guilty of domestic violence and further answered the "juror interrogatory" that they believed that Y.O. slapped D.O. in the face. The trial court sentenced Y.O. to a one-year period of community control with relevant sanctions, and issued a no-contact order.

{¶ 15} Y.O. now appeals, raising six assignments of error for our review.

## I. Sufficiency of the Evidence

{¶ 16} The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a

reasonable doubt. *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). "'The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-829, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 17} In his first assignment of error, Y.O. contends there was insufficient evidence to support his conviction for domestic violence. Specifically, Y.O. maintains that the city failed to prove that his actions were beyond the reasonable parental discipline of a child. However, this assertion of "parental discipline" is an affirmative defense, and a sufficiency of the evidence challenge is not a proper vehicle to review an affirmative defense. *State v. Mincy*, 8th Dist. Cuyahoga No. 106224, 2018-Ohio-3565 ¶24, citing *State v. Hancock*, 108 Ohio St.3d 57, 2009-Ohio-160, 840 N.E.2d 1032, ¶ 37, quoting *Caldwell v. Russell*, 181 F.3d 731 (6th Cir.1999) ("[T]he due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime."); *State v. Simes*, 8th Dist. Cuyahoga No. 103672, 2016-Ohio-7300, ¶ 20, citing *Hancock* ("[A] sufficiency challenge does not implicate affirmative defenses."). Accordingly, Y.O.'s affirmative defense will not be considered under this assignment of error.

{¶ 18} R.C. 2919.25(A) provides that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm" pursuant to R.C. 2901.01(C) is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

{¶ 19} In this case, sufficient evidence was presented to support Y.O.'s conviction for domestic violence. D.O. testified that Y.O., his father, slapped his face five times, the last time striking his left eye. He stated that each slap hurt more than the one before, and the last slap caused his eye to swell and become red. Moutous, Brickman, and Malley, all testified that they noticed swelling to D.O.'s left eye and some redness. Courts have repeated held that a slap to the face, at the very least, is an attempt to cause bodily injury. *See State v. Blonski*, 125 Ohio App.3d 103, 707 N.E.2d 1168 (9th Dist.1997) ("By itself, an open-handed slap to the face has been considered an attempt to cause bodily injury, and, thus, constitute[s] domestic violence.").

{¶ 20} Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence was presented to support Y.O.'s conviction of domestic violence. His first assignment of error is overruled.

## II. Manifest Weight of the Evidence

{¶ 21} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, at ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and

determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 22} In his second assignment of error, Y.O. contends that his conviction is against the manifest weight of the evidence because the use of corporal punishment or parental discipline was reasonable, justified, and created no imminent risk of serious physical harm.

{¶ 23} Proper and reasonable parental discipline can be an affirmative defense to a charge of domestic violence. *State v. Hart*, 110 Ohio App.3d 250, 254, 673 N.E.2d 992 (3d Dist.1996). In *State v. Suchomski*, 58 Ohio St.3d 74, 567 N.E.2d 1304 (1991), the Ohio Supreme Court found that prosecution under R.C. 2919.25(A) does not interfere with a parent's right to administer corporal punishment. The court stated:

> Nothing in R.C. 2919.25(A) prevents a parent from properly disciplining his or her child. The only prohibition is that a parent may not cause "physical harm" as that term is defined in R.C. 2901.01(C). "Physical harm" is defined as "any injury[.]" "Injury" is defined in Black's Law Dictionary (6 Ed.1990) 785 as "* * * [t]he invasion of any *legally protected interest* of another." (Emphasis sic.) A child does not have any legally protected interest which is invaded by proper and reasonable parental discipline.

*Id.* at 75.

{¶ 24} Thus, pursuant to *Suchomski*, a parent may use corporal punishment as a method of discipline without violating R.C. 2919.25(A) as long as the discipline is proper and reasonable under the circumstances. *State v. Hicks*, 88 Ohio App.3d 515, 518, 624 N.E.2d 332 (10th Dist.1993). "Proper" and "reasonable" have been respectively defined as "suitable or appropriate" and "not extreme or excessive." *Hicks* at 520.

{¶ 25} In this case, no photographs were taken of D.O.'s injuries. Accordingly, the jury was tasked with determining this case solely on the testimony and credibility of the witnesses. Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 26} At trial, Y.O. maintained that he merely spanked D.O. whereas D.O. claimed that Y.O. slapped him in the face five times, causing injury to his eye. The

witness testimony established that some form of injury to D.O.'s eye was observable. Moreover, we know based on the jury interrogatory that the jury believed that the conduct was not spanking; it was the slapping of D.O.'s face. Accordingly, the issue here is whether Y.O.'s actions of slapping D.O. in the face five times was "proper and reasonable parental discipline." Y.O. contends that because there was no evidence of substantial physical harm, the parental discipline was reasonable.

{¶ 27} In support of his argument, Y.O. cites to this court's decision in *Brooklyn v. Perna*, 8th Dist. Cuyahoga No. 96647, 2012-Ohio-265. In *Perna*, this court found that the defendant's parental discipline of throwing his daughter down on the couch three to four times, and covering her mouth, which caused no bruising or lasting injuries, was insufficient to support a conviction of domestic violence.

{¶ 28} We find *Perna* distinguishable because D.O. testified his father slapped him in the face five times and suffered swelling and redness to his left-eye. Moreover, unlike the defendant in *Perna* who warned his 13-year old daughter that continued poor behavior would result in discipline, Y.O. gave his 10-year-old son no warning before repeatedly slapping him in the face.

{¶ 29} "The propriety and reasonableness of corporal punishment in each case must be judged in light of the totality of the circumstances. A child's age, behavior, and response to noncorporal punishment as well as the location and severity of the punishment are factors that should be examined." *Hart*, 110 Ohio App.3d at 256, 673 N.E.2d 992. To this list must be added the parent's state of mind while administering the discipline. *Galion v. Martin*, 3d Dist. Crawford No. 3-91-6,

1991 Ohio App. LEXIS 6092 (Dec. 12, 1991) (striking a child in anger is not the same as disciplining an unruly child).

{¶ 30} After considering the factors set forth in *Hart*, the repeated slapping of D.O.'s face was not proper and reasonable under the totality of the circumstances. Although D.O. was admittedly defiant and argumentative with Y.O., no testimony was presented that other noncorporal punishment attempts were exhausted or that prior instances of noncorporal punishment proved ineffective. The fact that Y.O. slapped D.O. repeatedly without any opportunity for him to become obedient or respectful, is excessive. Accordingly, this is not the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice. Y.O.'s second assignment of error is overruled.

### III. Denial of Crim.R. 29

{¶ 31} In his third assignment of error, Y.O. contends that the trial court abused its discretion when it denied his motions for acquittal. We review a trial court's denial of a defendant's motion for acquittal using the same standard we apply when reviewing a sufficiency-of-the-evidence claim. *State v. Taylor*, 8th Dist. Cuyahoga No. 100315, 2014-Ohio-3134, ¶ 21-23 ("Crim.R. 29(A) and sufficiency of evidence review require the same analysis."), citing *Cleveland v. Pate*, 8th Dist. Cuyahoga No. 99321, 2013-Ohio-5571. Y.O. does not make any independent challenge under this assignment of error; he merely "incorporates the law and arguments as set forth in assignments of error I and II."

{¶ 32} Accordingly, for the same reasons as stated in our discussion of Y.O.'s first and second assignments of error, the assignment of error is overruled.

### IV. Incomplete Jury Instruction

{¶ 33} Y.O. contends in his fourth assignment of error that the trial court erred in failing to provide a definition of "totality of the circumstances" in the jury instructions.

{¶ 34} The record reflects that a lengthy discussion occurred regarding jury instructions and tailoring the instructions to include the affirmative defense of corporal punishment or parental discipline. However, the record does not reflect that a specific objection was raised regarding the omission of the definition of "totality of the circumstances." Accordingly, we review this assignment of error for plain error. Crim.R. 30(A).

{¶ 35} In order to prevail under a plain-error analysis, the appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus; Crim.R. 52(B). An erroneous jury instruction does not rise to the level of plain error unless it is clear that absent the error, the jury's verdict would have been different. *State v. Williams*, 8th Dist. Cuyahoga No. 94616, 2011-Ohio-925, ¶ 36, citing *Long* at paragraph two of the syllabus.

{¶ 36} In this case, the jury was instructed on the affirmative defense of "parental discipline" as follows:

> To find the defendant guilty of domestic violence, if you believe that parental discipline was administered, the State must prove beyond a reasonable doubt that the parent's conduct was improper and unreasonable parental discipline in light of the totality of the circumstances.
>
> * * *
>
> (B)(2) REASONABLE PARENTAL DISCIPLINE. The defendant claims that he was engaged in reasonable and proper parental discipline of his child. The law permits a parent to use reasonable and proper measures to discipline his child.
>
> (C) REASONABLE means not extreme or excessive under the circumstances.
>
> (D) PROPER means suitable or appropriate under the circumstances.
>
> If the parental discipline inflicted exceeded what was permissible as reasonable and proper under the circumstances, then it constitutes actionable domestic violence and you must find the defendant guilty.

{¶ 37} Y.O. contends that the trial court should have given an instruction similar to the one given in *Hicks,* 88 Ohio App.3d 515, 624 N.E.2d 332. Our review of *Hicks,* however, reveals that the instruction given to the jury in that case is substantially similar to the one Y.O. complains about on appeal, and contrary to Y.O.'s argument on appeal, the *Hicks* court did not give a "totality of the circumstances" instruction to the jury.

{¶ 38} Y.O. contends that the instruction should have included the factors the jury should consider in determining whether the parental discipline used was reasonable and proper. Those factors include: the child's age, the child's behavior

leading up to the discipline, the child's response to prior noncorporal punishment, the location and severity of the punishment, and the parent's state of mind while administering the punishment.

{¶ 39} In this case, the jury was properly instructed to make this determination based on the "totality of the circumstances." Although the trial court did not specifically define or identify the specific factors the jury should consider, the meaning of "totality of the circumstances" is relatively common and no legal definition is necessary to understand its everyday meaning. The jury heard testimony regarding all of the circumstances surrounding the incident, and accordingly, was able to determine if Y.O. used reasonable and proper parental discipline. Any specific factor that Y.O. wished the jury to focus on could have been included during closing argument to support his defense that his actions were reasonable and proper "under the totality of the circumstances."

{¶ 40} Based on the foregoing, we find that the omission of a specific jury instruction on "totality of the circumstances" was not plain error; the outcome of the trial would not have yielded a different result if the requested instruction was given. Accordingly, Y.O.'s fourth assignment of error is overruled.

## V. Verdict Form Inconsistent with Jury Instruction

{¶ 41} In his fifth assignment of error, Y.O. contends that the verdict form was inconsistent with the jury instruction given, amounting to structural error. The "verdict form" that Y.O. complains about is the jury "interrogatory" that was presented to the jury along with the general verdict form.

{¶ 42} Y.O. did not object to the verdict forms; accordingly, we review for plain error. In fact, when counsel for Y.O. was specifically asked about the jury interrogatory, she raised no objection and specifically acquiesced to the language used for the question.[1] Accordingly, it could be argued that any error was invited error.

{¶ 43} Under either standard, the inclusion of the jury interrogatory does not rise to error despite the fact that our review of the law does not reveal any instance when the use of jury interrogatories in criminal cases was determined to be appropriate. The verdict forms in criminal cases reflect a jury's decision on counts in the indictment or complaint — guilt or innocence; and whether those offenses are lessened or enhanced for sentencing purposes — the finding of aggravating or mitigating circumstances, specifications, or notifications.

{¶ 44} In this case, the jury was presented with two general verdict forms and a jury interrogatory. The verdict forms allowed the jury to either find Y.O. guilty

---

[1] On appeal, counsel explains that a gap in the transcripts occurred where the objection to the jury interrogatory occurred. However, when the record does not conform to what actually occurred at trial or any material is omitted from the record, App.R. 9 provides a means for a party to correct, modify, or include the omitted portions. That was not done in this case.

or not guilty of domestic violence. (Tr. 293.) The jury interrogatory however, asked, "If you find the defendant guilty, answer this question: Do you believe the defendant slapped D.O. on his face, near his eye?" The jury was specifically instructed by the court that it must first "make a unanimous decision about the verdict before you ever get to — and you may not even — get to the question." (Tr. 294.) The jury returned the verdict form finding Y.O. guilty, and also unanimously signed the jury interrogatory.

{¶ 45} This court can only speculate why the jury interrogatory was included, but based on the discussion surrounding whether Y.O.'s actions were corporal punishment or domestic violence, the parties seemed concerned that the jury would find that Y.O.'s conduct of spanking — conduct that all parties and the court seemed to agree would be reasonable and appropriate parental discipline — could be actionable domestic violence. Accordingly, the jury interrogatory removed any doubt – the jury found that Y.O.'s conduct of slapping D.O. was not reasonable and proper parental discipline.

{¶ 46} Although the use of jury interrogatories in criminal cases is questionable, its use here did not rise to the level of plain error under the facts and circumstances of this case. The verdict form was proper, and the jury interrogatory was only considered after the jury found beyond a reasonable doubt that Y.O. was guilty of domestic violence. Y.O.'s fifth assignment of error is overruled.

## VI. Admission of Hearsay

{¶ 47} In this case, Officer James Carmen testified about his interaction and interview with Y.O. at the police station. Over objection, Officer Carmen read Y.O.'s statement to the jury; the statement was also admitted as an exhibit over objection. Y.O. contends in his sixth assignment of error that the trial court erred in admitting his written statement because it was inadmissible hearsay. We disagree.

{¶ 48} An appellate court reviews the admission of evidence under an abuse of discretion standard. *State v. Phillips*, 8th Dist. Cuyahoga No. 104806, 2017-Ohio-1284, ¶ 26. A statement made by a defendant is considered an "admission," and is governed by Evid.R. 801(D)(2), which provides that a statement is not hearsay if it "is offered against a party and is the party's own statement." In this case, the state offered Y.O.'s voluntary written statement against him through Officer Carmen's testimony. Therefore, defendant's written statement was admissible. *See, e.g., State v. Drake*, 8th Dist. Cuyahoga Nos. 63964 and 63965, 1993 Ohio App. LEXIS 5193, (Oct. 28, 1993) (written statement of defendant admissible pursuant to Evid.R. 801(D)(2)(a)). Moreover, even assuming that the court abused its discretion, the error would be harmless because Y.O. subsequently testified and the state cross-examined him on his statement. Accordingly, the trial court did not abuse its discretion in allowing Officer Carman to read the statement and subsequently admit the statement into evidence.

{¶ 49} Y.O.'s sixth assignment of error is overruled.

{¶ 50} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue of this court directing the Rocky River Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, SR., J., CONCUR