[Cite as *State v. Nieves*, 2022-Ohio-3040.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 111161 |
| v. | : | |
| ELI NIEVES, JR., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 1, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-652923-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kevin Bringman, Assistant Prosecuting Attorney, *for appellee.*

William B. Norman, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant, Eli Nieves, Jr., appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of one count of sexual battery. Nieves contends that his trial counsel was ineffective for not objecting at trial to (1) the state's use of his post-arrest silence to imply his guilt; (2) the state's

use of an exhibit that contained hearsay within hearsay; and (3) hearsay testimony unintentionally elicited by defense counsel on cross-examination of a witness and then used by the state in cross-examining him. He also argues there was prosecutorial misconduct when the prosecutor asked him if he or the state's witnesses were lying and during closing argument when the state referred to him and another defense witness as liars. We affirm his convictions.

## I. Background

{¶ 2} In December 2020, Nieves was charged in a four-count indictment based on two alleged non-consensual acts of vaginal intercourse. Counts 1 and 3 charged rape in violation of R.C. 2907.02(A)(2) (the defendant engaged in sexual conduct by purposely compelling the victim to submit by force or threat of force); Counts 2 and 4 charged rape in violation of R.C. 2907.02(A)(1)(c) (the defendant engaged in sexual conduct with the victim who was not his spouse and the defendant knew the victim's ability to resist or consent was substantially impaired). Nieves pleaded not guilty, and the case proceeded to trial.

{¶ 3} The victim, A.G., testified that she had been long-time friends with Rosa Morales Cruz and Cruz's younger sister, Digna Santiago. She considered both Rose and Digna to be like family and often attended their family events.

{¶ 4} A.G. testified that on June 13, 2020, she attended a birthday party for one of Cruz's nieces. Digna was not at the party, although her two children were, so at around 10 p.m., A.G. gave Digna's children a ride home. Digna lived in an

apartment complex on the near westside of Cleveland with Nieves and their two children.

{¶ 5} A.G. said that after she arrived, she and Digna hung out, talking and smoking marijuana for about two hours before Nieves came home. A.G.'s son and Digna's children were in a bedroom playing games and eventually fell asleep. A.G. said that she began drinking after Nieves arrived and that she consumed four 20-ounce cans of Smirnoff as she, Digna, and Nieves talked and listened to music. A.G. conceded that she was "pretty drunk" when they went into the bedroom around 6 a.m. and connected Digna to her dialysis machine. A.G. said that she lay on the bed next to Digna, talking to her, and eventually fell asleep.

{¶ 6} A.G. said she awoke an hour or so later, went to the bathroom, and then sat at the dining room table, smoking a cigarette. She said she knew she was drunk because as she walked from the bathroom to the table she was dizzy and had to lean on the wall for support. A.G. testified that Nieves was in the living room and they talked; she said that Nieves put a twin mattress on the floor in the living room for her and when she "got the energy to get up," she walked to the mattress and "threw" herself down with her stomach on the mattress but her legs hanging off. A.G. said she "didn't have the energy to do anything," including moving her legs onto the mattress.

{¶ 7} A.G. testified that the next thing she remembers is Nieves pulling her pants down to her knees as she was lying face-down on the mattress and then inserting his penis into her vagina. She said she tried to wave her hand to motion

that he should get off her and tried to mumble "stop," but she "didn't have any strength to do anything." A.G. said it was "no more than a couple of minutes" before Nieves pulled her pants up and walked away. She said that he came back a few minutes later and again pulled her pants down to her knees and inserted his penis in her vagina. A.G. testified that was crying and told Nieves to "get off me."

{¶ 8} A.G. said that after Nieves walked away, she realized she "needed help and couldn't do anything" because she was intoxicated and "had no strength." She said that she picked up her phone, which was on the floor by the mattress, and tried to text Rosa but the text made no sense. A.G. said she then made a six-second video of the floor and the rug and sent it to Rosa. A.G. then made a short audio message that said, "Please, boo. I love you. Please believe me," and sent the message to Rosa.

{¶ 9} After a few text messages between Rosa and A.G., Rosa told A.G. that she would pick her up. A.G. gathered her son and purse and waited outside for Rosa, who took them home. When they arrived home, A.G. "passed out" on the couch, and Rosa called A.G.'s mother to come be with her. Later that evening, A.G. went to MetroHealth hospital, where she was examined by a sexual-assault nurse.

{¶ 10} A.G. testified that she texted Digna the next day and told her she wanted to tell her something in person when Nieves was not around. After a series of texts, A.G. told Digna that Nieves "did something," and eventually, Digna told A.G. that she did not ever want to see or talk to her again. A.G. made a police report the same day.

{¶ 11} A.G. testified that state's exhibit No. 8 was a series of text messages between her and Rosa in which Rosa reported to A.G. what Digna had told her about what happened. The first text in the exchange stated: "He said: you was flirting with him all night and y'all stayed up together and that you guys kissed and touched and then f---ed and then you stopped and started getting on your phone and cried." A.G. responded that "none of that f---ing happened. * * * I didn't f--- him. I couldn't even move or roll over."

{¶ 12} Rosa testified for the state that on the morning of June 14, she received a short video from A.G. that she did not understand. After she then received an audio message from A.G., she called A.G., who Rosa said was "scared" and "crying." Rosa said she told A.G. that she would pick her up and when she reached Digna's apartment, she saw A.G., who was crying hysterically, and her son sitting in A.G.'s car. Rosa testified that as she was driving them to A.G.'s house, A.G. told her that Nieves had raped her.

{¶ 13} Rosa testified that state's exhibit No. 8 was a screenshot of her text messages to A.G. in which she told A.G. what she had learned after talking to her family. Rosa then testified that state's exhibit No. 9 was a screenshot of texts between her and Digna that she sent to A.G. to let A.G. know that she had spoken to Digna (who would not respond to A.G.'s texts) and that Digna told Rosa that she did not want to know what happened to A.G. if it involved Nieves.

{¶ 14} Brian Kellums, a detective from the city of Cleveland Sex Crimes and Child Abuse Unit, testified that he was assigned the case on June 16, 2020. He said

that he interviewed A.G., reviewed the video and audio clips and text messages she provided, and obtained her medical records from MetroHealth hospital. He also submitted items from A.G.'s rape kit to the Cuyahoga County Regional Forensic Science Laboratory and after receiving an initial report from the lab, obtained a buccal swab from Nieves for comparison with the DNA results from the rape kit. Nieves's buccal swab was forwarded to the lab, which subsequently reported that it could not exclude him as a contributor to the DNA found in the vaginal swab in A.G.'s rape kit.

{¶ 15} Digna testified for the defense that when Nieves came home on June 13, 2020, she, A.G., and Nieves hung out, talked, and listened to music until approximately 6 a.m. the next morning. She said that A.G. was acting "very flirty" with Nieves, "pushing him and stuff, touching his shoulder."

{¶ 16} She said that Nieves and A.G. hooked her up to her dialysis machine in the bedroom around 6 a.m., and she fell asleep. She said she work up around 11 a.m. and went in the hallway, where she met A.G., who "was a little nervous" and was crying. Digna asked her what was wrong but did not get an answer; she said that A.G. just gathered her son and purse and walked out.

{¶ 17} Digna said she "had an idea" on June 14, 2020, that something had happened but said she kicked Nieves out of the house three weeks later when she found out from her brother that Nieves and A.G. had "relationships and stuff." She testified that she did not believe that Nieves raped A.G., however, because she was

"right there," and if A.G. had called for her, "it would have been all over with for him" and she would have called the police.

{¶ 18} Nieves testified that he, Digna, and A.G. talked, drank, and listened to music until about 6 a.m., when they connected Digna to her dialysis machine. He said that Digna asked him to put a mattress out for A.G., which he did. He said that he and A.G. then sat at the kitchen table and that A.G. started dancing and "being really touchy" with him. He testified that she "was rubbing against [him] and the next thing you know she's on her knees and we're having consensual sex." Nieves said the sex only happened once and did not occur on the mattress. He also said that A.G. was not so intoxicated that she could not make an informed decision about consensual sex, and he denied that she ever tried to waive him off or tell him to stop. He said that A.G. gathered her things and her son when they were finished and was "perfectly fine."

{¶ 19} At the state's request, the jury was instructed on the lesser-included offense of sexual battery in violation of R.C. 2907.03(A)(2) regarding Counts 2 and 4.[1] The jury found Nieves not guilty of rape as charged in Counts 1, 2, and 3 and not guilty of the lesser-included offense of sexual battery charged in Count 2. The jury also found Nieves not guilty of rape as charged in Count 4, but guilty of the lesser-included offense of sexual battery with respect to that count.

---

[1] R.C. 2907.03(A)(2) states that "[n]o person shall engage in sexual conduct with another, not the spouse of the offender, when the offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired."

{¶ 20} The trial court sentenced Nieves to 36 months in prison on the sexual battery offense, to be served consecutive to his four to seven-year sentence in Cuyahoga C.P. No. CR-20-651357. This appeal followed.

## II. Law and Analysis

### A. The State's Questions About Nieves's Post-arrest Silence

{¶ 21} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." This provision applies to the states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

{¶ 22} In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that statements by defendants obtained in response to questioning by law enforcement officers while the defendants are in custody are presumed involuntary, and therefore inadmissible, unless proper procedural safeguards have been taken to protect the privilege against self-incrimination. *Id.* at 478-479. The court detailed those procedural safeguards in the *Miranda* warnings, which include a warning that the defendant has the right to remain silent.

{¶ 23} In his first assignment of error, Nieves contends that his trial counsel was ineffective for failing to object to the state's introduction and use of his post-arrest silence at trial to imply his guilt, in violation of the restrictions and requirements of Evid.R. 401 and 403. In his second assignment of error, Nieves contends that trial counsel was ineffective for not objecting to the state's use of his

post-arrest silence as violative of his due process rights under the United States and Ohio Constitutions.

{¶ 24} Nieves objects to the following colloquy between him and the prosecutor on his cross-examination:

Q.    By your story, nobody caught you and [A.G.] in this consensual act, right?

A.    I'm sorry?

Q.    You weren't caught in the act, right?  Nobody caught you and [A.G.] having consensual sex on the floor on your apartment, right?

A.    No.

Q.    And today is November 12, 2021.  This is the first time your story comes out?

A.    Well, in your presence and everyone else's presence, yes.

(Tr. 453-454.)

{¶ 25} Nieves contends that the prosecutor "rehashed the point" of his post-arrest silence during closing argument by arguing that he and Digna "can't get their story straight" even though they had "the whole trial, 17 months to do it, but you can't do that because the truth does not change."  (Tr. 490.)

{¶ 26} Nieves argues that the prosecutor's act of alerting the jury to his post-arrest silence established an impermissible inference of guilt, i.e., "that [he] was guilty and did not come forward with his story earlier because he needed time to manufacture his story."  (Appellant's brief, p. 17.)  Nieves concedes that the record contains nothing indicating that he was ever informed of his *Miranda* rights but

nevertheless contends that counsel's failure to object to the prosecutor's use of his post-arrest silence was ineffective assistance that requires reversal of his conviction.

{¶ 27} Reversal of a conviction for ineffective assistance of counsel requires that the defendant show that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, ¶ 109. Deficient performance occurs when counsel's performance falls below an objective standard of reasonable representation. *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 23. Prejudice is found when "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 28} Nieves acknowledges that counsel's failure to object limits us to plain error review. Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22. An alleged error is plain error if the error is obvious and affected the outcome of the trial. *Id*. We take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 29} In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court held that the state's use of the defendant's post-

*Miranda* silence to impeach his trial testimony violated the due process clause of the Fourteenth Amendment. The court found that because *Miranda* warnings contain an implicit assurance that silence will carry no penalty, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 619.

{¶ 30} Subsequently, in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 130, 871 L.Ed. 2d 490 (1982), the United States Supreme Court distinguished *Doyle* on the basis that, unlike in *Doyle*, the record did not indicate that the defendant had "received any *Miranda* warnings during the period in which he remained silent immediately after his arrest." *Id.* at 605. The *Fletcher* Court reasoned that "in the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand." *Id.* at 607.

{¶ 31} The Ohio Supreme Court recognized *Fletcher's* holding that a defendant's post-arrest, pre-*Miranda* silence could be used to impeach his version of events if he took the stand and testified in *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 23.

{¶ 32} In *State v. McGail*, 2d Dist. Miami No. 2014-CA-27, 2015-Ohio-5384, the Second District applied *Fletcher* to a case in which the defendant argued that the prosecutor's attempts to impeach his version of events with his post-arrest silence

was prosecutorial misconduct that violated his right to remain silent as guaranteed by *Miranda*, 384 U.S. 436, 86 S.Ct.1602, 16 L.Ed.2d 694. The Second District rejected this argument, finding that the case was controlled by *Fletcher* because the state used the defendant's post-arrest silence for impeachment purposes on cross-examination and, as in *Fletcher*, the record did not indicate that the defendant had received any *Miranda* warnings during the period in which he remained silent after his arrest. *Id.* at ¶ 16. The court held that "because the prosecutor's references to [the defendant's] silence were permitted by *Fletcher*, we see no prosecutorial misconduct and certainly no plain error." *Id.*

**{¶ 33}** Likewise, we find no plain error or ineffective assistance of counsel in this case related to counsel's failure to object on due process grounds to the state's questions about Nieves's silence prior to trial. Nieves chose to testify on his own behalf, and as he concedes, the record contains nothing indicating that he was advised of his *Miranda* rights during the time he remained silent. Therefore, pursuant to *Fletcher*, 455 U.S. at 607, 102 S.Ct. 130, 871 L.Ed.2d 490, the prosecutor was allowed to question him about his failure to present his version of events to the police or prosecutor prior to trial. *See State v. Walker*, 8th Dist. Cuyahoga No. 94875, 2011-Ohio-1556, ¶ 30 (in light of *Fletcher*, there was no plain error where the prosecutor asked the defendant on cross-examination about why he did not tell the police he was the actual victim because the defendant chose to take the stand and there was no indication in the record that the defendant had been advised of his *Miranda* rights at the time he remained silent); *State v. Thomas*, 8th Dist. Cuyahoga

No. 68130, 1996 Ohio App. LEXIS 1409, 9 (Apr. 4, 1996) (no error in the prosecutor cross-examining the defendant about his failure to give the officers an alibi where, as in *Fletcher*, the record did not affirmatively show that the defendant received *Miranda* warnings during the period in which he remained silent and the defendant chose to take the stand to testify); *In re T.S.*, 10th Dist. Franklin No. 06AP-1163, 2007-Ohio-5085, ¶ 11 ("[A]ppellant chose to testify on his own behalf, and there is no evidence of whether or not appellant was given *Miranda* warnings. Thus, the constitutional protections of *Doyle* are not applicable, and the prosecutor could question appellant about his failure to initially provide important details about the incident to the police."); *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 34 (where appellant chose to testify at trial and admitted that he never received *Miranda* warnings, trial court did not abuse its discretion in allowing the state to cross-examine appellant about his post-arrest silence).

{¶ 34} We next consider Nieves's argument that counsel should have objected to the prosecutor's questions about his silence under the provisions of Evid.R. 401 and 403. Evid.R. 401 defines relevant evidence as evidence "having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403(A) provides that "although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury." "Courts have characterized Evid.R. 403 as an 'extraordinary remedy' that should be only used

sparingly because it permits the exclusion of otherwise relevant evidence." *State v. Sutherland*, 2d Dist. Darke No. 2021-CA-4, 2021-Ohio-2433, ¶ 29, quoting *United States v. Meester*, 762 F.2d 867, 875 (11th Cir.1985). "The major function of Evid.R. 403 is 'limited to excluding matter of scant or cumulative force, dragged in by the heels for the sake of its prejudicial effect.'" *Id.*, quoting *United States v. McRae,* 593 F.2d 700, 707 (5th Cir.1979).

{¶ 35} Nieves contends that the evidence about his silence had little probative value but a high potential for unfair prejudice. He contends that this case was "a swearing contest" where the slightest amount of evidence could have tilted the verdict in his favor. Thus, he argues that the state's use of his post-arrest silence was unfairly prejudicial because it established an impermissible inference of guilt and, accordingly, that defense counsel's failure to object under Evid.R. 401 and 403 was ineffective assistance of counsel.

{¶ 36} As support, Nieves cites to *State v. Combs*, 62 Ohio St.2d 278, 581 N.E.2d 1071 (1991), in which the Ohio Supreme Court concluded that even where constitutional principles might not preclude admission of evidence, such evidence may sometimes be excluded under Evid.R. 401 and 403. *Id.* at 281. Nieves's reliance on *Combs* is misplaced, however, because, unlike this case, the defendant in *Combs* did not testify at trial and, thus, did not put his credibility into issue.

{¶ 37} Moreover, the purpose of the state's cross-examination was not to introduce substantive evidence of Nieves's guilt through his silence but to challenge the veracity of his trial testimony. In state's exhibit No. 8, which Nieves

acknowledged was his statement to Digna shortly after the incident about what had happened (Tr. 459-460), Nieves said that after their sexual encounter, A.G. "started getting on [her] phone and cried." The inconsistency between Nieves's account of the incident in state's exhibit No. 8 and his trial testimony some 17 months later that A.G. was "perfectly fine" after the encounter made both the substance of his statements and their timing highly probative. Accordingly, we find neither plain error nor ineffective assistance of counsel in counsel's failure to object to the state's questions about Nieves's silence prior to trial. The first and second assignments of error are overruled.

## B. Hearsay Within Hearsay

{¶ 38} In her direct examination, Rosa identified state's exhibit No. 8 as a series of text messages between her and A.G. (Tr. 328-329.) Rosa testified that she sent the texts to A.G. after she had conversations with some of her family members, which she then "relayed" to A.G. (Tr. 329.) The first text in the text exchange was Rosa's text to A.G. informing her that Nieves told Digna that A.G. was flirting with him all night and that they had consensual sex, after which A.G. was on her phone and was crying. (Tr. 329-331). Counsel raised no objection to Rosa's testimony nor later, to the admission of state's exhibit No. 8 as an exhibit to go to the jury. (Tr. 416.)

{¶ 39} In his third assignment of error, Nieves contends that the text in state's exhibit No. 8 regarding what he told Digna about what happened was

inadmissible hearsay under Evid.R. 801(C).[2] He further contends that because the text established what Rosa told A.G. about what Nieves told Digna, it was hearsay within hearsay in violation of Evid.R. 805. He asserts that counsel's failure to object to the admission of such hearsay under the rules of evidence was plain error and ineffective assistance of counsel because the text was prejudicial in that it tended to corroborate the state's case and undermine his defense. In his fourth assignment of error, he contends that counsel's failure to object to such hearsay on constitutional grounds was likewise plain error and ineffective assistance of counsel.[3]

{¶ 40} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is not admissible except as provided by the United States or Ohio Constitutions, by statute, or court rule. Evid.R. 802.

{¶ 41} Certain statements are excluded from the definition of hearsay, including statements of a party-opponent where the statement is offered against the party. Evid.R. 801(D)(2)(a). Thus, the Ohio Supreme Court has held that a "defendant's own out-of-court statements, offered against him at trial, are not hearsay." *State v. Leonard*, 104 Ohio St.3d 54, 2003-Ohio-6235, 818 N.E.2d 229, ¶ 112, citing Evid.R. 801(D)(2)(a); *see also State v. Tyler*, 196 Ohio App.3d 443,

---

[2] Nieves incorrectly asserts that the hearsay text was in state's exhibit No. 9 but it is apparent he is referring to state's exhibit No. 8.

[3] The transcript reflects that defense counsel objected to the prosecutor's questions on Nieve's cross-examination about state's exhibit No. 8 but the trial court overruled the objection (Tr. 459).

2011-Ohio-3937, 964 N.E.2d 12 (4th Dist.) ("Tyler's statements in the recording are admissions and are, by definition, not hearsay."); *State v. Phillips*, 8th Dist. Cuyahoga No. 104806, 2017-Ohio-1284, ¶ 30 (witness's testimony that she heard the defendant admit that he hit the witness's car was properly admitted as an admission by a party-opponent).

{¶ 42} The text to which Nieves now objects contains his out-of-court statement about what happened during his sexual encounter with A.G. It is thus an admission by a party-opponent and properly admissible under Evid.R. 801(D)(2). Moreover, any error in its admission would be harmless because Nieves subsequently testified and the state cross-examined him about his statement. *Westlake v. Y.O.*, 8th Dist. Cuyahoga No. 107226, 2019-Ohio-2432, ¶ 48. Importantly, during his cross-examination, Nieves adopted the statement contained in the text as his own. (Tr. 458-460.) Accordingly, we find neither plain error nor ineffective assistance of counsel. The third and fourth assignments of error are overruled.

### C. Hearsay Elicited on Defense Counsel's Cross-Examination of Det. Kellums

{¶ 43} While cross-examining Det. Kellums, defense counsel asked whether the detective had ever tried to contact Nieves prior to trial and gather facts to determine what happened on the night in question. Det. Kellums replied, "[w]e reached out to him. He never responded to us." (Tr. 402-403.) Defense counsel then asked Det. Kellums how he tried to reach Nieves. The detective responded that "[a] voicemail message was left for him by another detective I was working with at

the time." (Tr. 403.) Counsel asked who that detective was and Det. Kellums responded, "Detective Clark." *Id.* Detective Clark did not testify at trial.

{¶ 44} In his fifth assignment of error, Nieves contends that defense counsel should have moved to strike Det. Kellums's testimony as inadmissible hearsay and that his failure to do so was ineffective assistance of counsel. He contends that the state's theme at trial was that he remained silent post-arrest so that he could use the time between arrest and trial to manufacture his version of events. Thus, he contends that Det. Kellums's testimony about Det. Clark's attempts to reach him and the lack of response to those attempts was out-of-court testimony offered for the truth of the matter asserted (i.e., the actions she took and the response she received) that should have been excluded.

{¶ 45} Nieves's argument is without merit. Defense counsel elicited the testimony from Det. Kellums when the detective answered the questions posed to him by defense counsel. Under the doctrine of invited error, a litigant may not "take advantage of an error which he himself invited or induced." *Hal-Artz Lincoln-Mercury v. Ford Motor Co.,* 28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the syllabus. Thus, a defendant cannot challenge testimony elicited during his cross-examination of a state's witness on hearsay or confrontation grounds because any error in the admission of the testimony was invited or induced by the defendant. *State v. Pennington*, 1st Dist. Hamilton Nos. C-170199 and C-170200, 2018-Ohio-3640, ¶ 54. The fifth assignment of error is overruled.

### D. Prosecutorial Misconduct

{¶ 46} Last, Nieves contends that trial counsel was ineffective for not objecting to multiple instances of prosecutorial misconduct. Specifically, he contends that during cross-examination, the prosecutor improperly asked him whether he or the state's witnesses were lying, improperly asked him about his post-arrest silence to imply his guilt, and called him a liar based on his response to questions about impermissible hearsay testimony elicited during Det. Kellums's cross-examination. He also contends that during closing argument, the prosecutor improperly told the jury that he and Digna were "liars," warned the jury that he had an incentive to lie, and implied that he was guilty because of his post-arrest silence. Nieves argues that counsel's failure to object to these impermissible comments was ineffective assistance of counsel.

{¶ 47} The test for prosecutorial conduct is "whether * * * remarks [made by the prosecutor] were improper and, if so, whether they prejudicially affected the accused's substantial rights." *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 878 N.E.2d 1185, ¶ 145. We consider the trial record as a whole, rather than focus on the culpability of the prosecutor, to determine whether the defendant received a fair trial. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. "An appellate court should only reverse a conviction if the effect of the misconduct 'permeates the entire atmosphere of the trial.'" *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 58, quoting *State v. Tumbleson,* 105 Ohio App.3d 693, 699, 664 N.E.2d 1318 (12th Dist.1995). Moreover, an appellant

must show that there is a reasonable probability that but for the prosecutor's misconduct, the result of the proceeding would have been different. *State v. Erker*, 8th Dist. Cuyahoga No. 107790, 2019-Ohio-3185, ¶ 99, citing *State v. Loza*, 71 Ohio St.3d 61, 78, 651 N.E.2d 1082 (1994).

{¶ 48} Nieves's argument regarding the prosecutor's questions about his post-arrest silence is without merit as we have already determined that the prosecutor was permitted to question him about his failure to present his version of events to the police or prosecutor prior to trial.[4] Regarding Nieves's contentions that the prosecutor called him a liar and improperly asked him if he or the state's witnesses were lying, the record reflects the following exchange:

> Q.    According to you, this was one consensual act that you were being lied on, right?
>
> A.    Yes.
>
> Q.    And you knew according to you, that this was a lie that not only when Detective Clark was calling you in July, but you knew this was a lie according to you on June 14, 2020?
>
> A.    I never received a call, or message, or email, or voicemail from anyone saying they were from [the] police department or anything like that?
>
> Q.    So Detective Kellums is lying to this jury?
>
> A.    I'm not saying he's lying.
>
> MR. RAMSEY:  Objection, your Honor.
>
> A.    Maybe they gave him the wrong number.

---

[4] *See* discussion regarding Nieves's first and second assignments of error.

THE COURT:  Overruled.

Q.    That's one lie.  So [A.G.], — you said she left perfectly fine the morning of June 14th?

A.    Yes.

Q.    By the testimony here and by the screenshots we know that was roughly around 10:00 that morning?

A.    Yes.

Q.    Would you agree with me on that point?

A.    Yes.

Q.    Ms. Morales, Rosa.

A.    Yes.

Q.    You heard her testify.  In fact, you have heard all of the testimony?

A.    Yes.

Q.    And you still live with Digna?

A.    No.

Q.    But Ms. Rosa Morales testified about [A.G.'s] demeanor steps outside of your apartment at 10:00 that morning.  She was hysterical.  She could not even complete a sentence.  Is your testimony to this jury that on June 14th at 10:00 a.m. that the moment this lie started?

        MR. RAMSEY:  Objection.

Q.    And that nobody knew?

        THE COURT:  Overruled.

(Tr. 454-455.) [5]

{¶ 49} "Determinations of credibility are for the finder of fact," which in this case was the jury. *State v. Beard*, 8th Dist. Cuyahoga No. 61493, 1993 Ohio App. LEXIS 125, 11 (Jan. 14, 1993). Thus, it was improper for the prosecutor to state "that's one lie" when Nieves responded to the prosecutor's question about Det. Kellums's testimony. Although the prosecutor contends this remark was not directed at Nieves but was only meant to "highlight what must be false if what he testified to was true," the remark read in context clearly indicates the prosecutor's belief that Nieves was lying about not receiving a request to contact Det. Clark. A prosecutor may not state his unsupported belief as to whether a witness is telling the truth. *State v. Henderson*, 11th Dist. Trumbull No. 99-T-0001, 2000 Ohio App. LEXIS 4579, 11 (Sept. 29, 2000), citing *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). It was also improper for the prosecutor to ask Nieves on cross-examination whether the state's witnesses lied during their testimony. *Id.*, citing *United States v. Richter*, 826 F.2d 206, 208 (2d. Cir.1987).

{¶ 50} Regarding Nieves's argument that the prosecutor called him and Digna "liars" during closing argument, we do not find any such assertion to the jury in the transcript. Instead, the transcript reflects that the prosecutor told the jury that Nieves and Digna "can't get their story straight" and then pointed out discrepancies between their testimony and other evidence that made their testimony

---

[5] Despite Nieves's and the prosecutor's assertions that defense counsel did not object, the transcript reflects that defense counsel objected to the improper questioning but the trial court overruled the objections. (Tr. 454-455.)

less believable and undeserving of much weight. (Tr. 490-491.) We find no prosecutorial misconduct in such argument. The prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences may be drawn therefrom. *Peffer v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 94356, 2011-Ohio-450, ¶ 27. Additionally, a "prosecutor may comment upon the circumstances of witnesses in their testimony" and may argue "that these circumstances make the witnesses more or less believable and deserving of more of less weight." *State v. Clay*, 181 Ohio App.3d 563, 2009-Ohio-1235, 910 N.E.2d 14, ¶ 47 (8th Dist.). A prosecutor may not state that the defendant is a liar, but "may suggest that the evidence demonstrates the defendant is lying, scheming, or has ulterior motives." *State v. Irwin*, 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, ¶ 116, citing *State v. Kroger*, 12th Dist. Clermont No. CA99-05-05, 2000 Ohio App. LEXIS 1393, 2 (Apr. 3, 2000). Thus, we find that the prosecutor's statements were within the bounds of proper closing argument.

{¶ 51} Although Nieves argues he was prejudiced by the prosecutor's misconduct, he has not shown that the prosecutor's conduct permeated the entire trial so as to deny him a fair trial nor that but for the prosecutor's isolated improper comment and questions, the jury would not have found him guilty of the lesser-included offense of sexual battery in violation of R.C. 2907.03(A)(2). In fact, Nieves admitted he had sex with A.G., the evidence was overwhelming that she was substantially impaired, and the jury could have reasonably concluded that Nieves,

who had been drinking and talking with A.G. for several hours, knew of her condition. Accordingly, the sixth assignment of error is overruled.

{¶ 52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, P.J., and
MARY J. BOYLE, J., CONCUR