[Cite as *State v. Frankowski*, 2023-Ohio-110.]

STATE OF OHIO )                IN THE COURT OF APPEALS
                    )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF MEDINA )

STATE OF OHIO                         C.A. No.      21CA0059-M

    Appellee

    v.                                   APPEAL FROM JUDGMENT
                                        ENTERED IN THE
DAVID E. FRANKOWSKI                      COURT OF COMMON PLEAS
                                        COUNTY OF MEDINA, OHIO
    Appellant                         CASE No.      21CR0008

DECISION AND JOURNAL ENTRY

Dated: January 17, 2023

CALLAHAN, Judge.

**{¶1}** Appellant, David Frankowski, appeals his convictions by the Medina County Court of Common Pleas. This Court affirms.

I.

**{¶2}** On the evening of December 26, 2020, someone drilled out the lock on the front door of C.M.'s apartment in Brunswick Hills, kicked in the door, and entered. C.M., who was playing in an indoor softball tournament in another city on that date, received an alert from her smartphone and watched the video from her back-door security camera as a man left the apartment. Having been in a long-term relationship with Mr. Frankowski, C.M. identified him as the intruder. C.M. contacted the Brunswick Hills police, who responded to the apartment. The sliding glass door in the back of the apartment was open, and police noted footprints approximately the length of size thirteen male boots in a pattern that led away from the apartment.

{¶3} After following the footprints to no avail, police drove to Mr. Frankowski's residence in Brunswick. They found the house silent and mostly dark, and no one answered when they knocked and announced their presence at the front and rear doors. They spoke with C.M. and escorted her to her apartment the following day, then obtained a search warrant for Mr. Frankowski's residence. During the search that followed, officers found numerous public safety radios, several police scanners, and computers. In other ways, Mr. Frankowski's residence was notable for what it did not contain: a desktop computer system was missing its tower, and an entire dresser was empty. All of the shoes in the residence were men's size thirteen with the exception of one slide-type pair, which was a size twelve. During searches of other locations after Mr. Frankowski's arrest on January 6, 2021, police found two additional public safety radios.

{¶4} Mr. Frankowski was indicted for burglary in violation of R.C. 2911.12(A)(2)/(D), tampering with evidence in violation of R.C. 2921.12(A)(1)/(B), aggravated theft in violation of R.C. 2913.02(A)(1)/(B)(2), and telecommunications fraud in violation of R.C. 2913.05. Just before a jury trial commenced, Mr. Frankowski moved to exclude any evidence related to a fire that damaged C.M.'s car on the date of the burglary, including any testimony that placed Mr. Frankowski in the vicinity of the fire, pursuant to Evid.R. 404(B). The State opposed the motion, maintaining that the evidence at issue was "substantive evidence" that was necessary to the trial of the charges at issue and that omitting testimony related to the car fire "would make the [remaining] evidence not make sense." The trial court denied the motion, concluding that the evidence "really form[ed] an immediate background to the alleged act * * * and that's the foundation of the crime charged. Without it, the evidence with regard to the burglary and the house wouldn't make sense."

**{¶5}** The jury found Mr. Frankowski guilty of a lesser included offense of burglary in violation of R.C. 2911.12(A)(3)/(D) and guilty of tampering with evidence. The jury found him not guilty of the remaining charges, and the trial court sentenced him to thirty-six months in prison for each offense, to be served consecutively. Mr. Frankowski appealed, raising five assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED AS A MATTER OF LAW BY ALLOWING THE STATE TO INTRODUCE MULTIPLE IMPERMISSIBLE OTHER ACTS EVIDENCE PURSUANT TO EVID.R. 404(B) WHEN THE STATE FAILED TO PROVIDE NOTICE TO THE DEFENSE, THE MATERIAL WAS NOT RELEVANT, WAS NOT OFFERED FOR A PROPER PURPOSE, AND THE PREJUDICIAL VALUE SUBSTANTIALLY OUTWEIGHED ANY PROBATIVE VALUE.

**{¶6}** Mr. Frankowski's first assignment of error argues that the trial court erred by permitting other-acts testimony in violation of Evid.R. 404(B). This Court does not agree.

**{¶7}** As a general rule, evidence of character is inadmissible to prove action in conformity therewith. Evid.R. 404(A). More specifically, this general rule applies to evidence of other crimes, wrongs, or acts, which are "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Evid.R. 404(B)(1). Evid.R. 404(B), however, does not apply to evidence of other acts that is "not 'independent' of the charged crime." *State v. David*, 1st Dist. Hamilton No. C-210227, 2021-Ohio-4004, ¶ 14, quoting *State v. Mann*, 19 Ohio St.3d 34 (1985), paragraph one of the syllabus. As this Court has explained, "[e]vidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime on trial as the proof of one crime incidentally involves the other crime, or explains the circumstances, or tends logically to prove any element of

the crime charged." *State v. Long*, 64 Ohio App.3d 615, 627-628 (9th Dist.1989). *See also State v. Davis*, 64 Ohio App.3d 334, 339-340 (12th Dist.1989). This is because juries, in rendering a verdict, must have knowledge of the circumstances surrounding the conduct at issue. *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980).

{¶8} Mr. Frankowski's first argument regarding "other acts" evidence is that the trial court erred by permitting testimony about C.M.'s car being set ablaze on the date of the burglary. This testimony came in, first, through the testimony of C.M. herself. According to her testimony, while she was playing in an all-day indoor softball tournament in Lake County on December 26, 2020, she learned that a car had been set on fire in the parking lot. She left the facility to find that it was her vehicle. C.M. testified that she suspected Mr. Frankowski of setting the fire and that she feared he was in the area watching because he sometimes monitored police communications. She also testified that because she feared that her apartment was vulnerable—and because she could not drive home—she contacted the Brunswick Hills police to request that an officer keep an eye on her apartment.

{¶9} This testimony provided necessary context for the testimony of the witnesses that followed. Officer Michael Dominguez, for example, testified that he was dispatched to C.M.'s neighborhood in response to her call for assistance, that he observed her residence for between thirty minutes and one hour before other calls demanded his attention, and that he later responded to an emergency call regarding a break-in that occurred after he left the area. With respect to the charges of telecommunications fraud and theft, C.M.'s testimony corresponded with location data associated with radio equipment in Mr. Frankowski's possession. This testimony was, therefore, intrinsic to the offenses charged, and it was admissible apart from Evid.R. 404(B).

{¶10} Mr. Frankowski has also argued that various incidents from his relationship with C.M., which he characterizes as "dating drama" were incorrectly admitted under Evid.R. 404(B). As with testimony related to the fire, testimony regarding the nature of Mr. Frankowski's relationship with C.M., particularly in the period immediately leading up to the burglary, explained the circumstances of the burglary and was also admissible apart from Evid.R. 404(B). Similarly, C.M.'s testimony during her direct examination that Mr. Frankowski once asked her to use the public safety radio of a housekeeping client and that he manipulated C.M.'s electronic communications was directly relevant to the other charges that Mr. Frankowski faced in that it demonstrated his technical expertise with electronic communications. This Court must also observe that while the State's inquiries into these matters during C.M.'s direct examination was narrow and focused, defense counsel's cross-examination of her was wide-ranging. Consequently, the cross-examination elicited far more information than the direct examination about the nature of their turbulent relationship and Mr. Frankowski's alleged manipulation of electronic communications.

{¶11} None of the evidence to which Mr. Frankowski directs this Court's attention is other acts evidence as contemplated by Evid.R. 404(B). *See Wilkinson*, 64 Ohio St.2d at 317; *Long*, 64 Ohio App.3d at 627-628. The trial court did not err by admitting that evidence, and Mr. Frankowski's first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

THE STATE ENGAGED IN PROSECUTORIAL MISCONDUCT THROUGHOUT THE COURSE OF THE TRIAL THAT DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL.

**{¶12}** Mr. Frankowski's second assignment of error argues that he was denied a fair trial as the result of multiple instances of prosecutorial misconduct during closing arguments. This Court does not agree.

**{¶13}** The State is permitted latitude during closing arguments and is "at liberty to prosecute with earnestness and vigor[.]" *State v. Smith*, 14 Ohio St.3d 13, 13-14 (1984). The State may "strik[e] hard blows," but it "may not strike foul ones." *Id*. at 14, citing *Berger v. United States*, 295 U.S. 78, 88 (1935). "[P]rosecutors must be diligent in their efforts to stay within the boundaries of acceptable argument and must refrain from the desire to make outlandish remarks, misstate evidence, or confuse legal concepts." *State v. Fears*, 86 Ohio St.3d 329, 332 (1999).

**{¶14}** When prosecutorial misconduct is alleged to have occurred in the context of closing argument, this Court must consider whether the remarks at issue were improper and, if they were, whether the defendant's substantial rights were prejudicially affected. *State v. Kirkland*, 160 Ohio St.3d 389, 2020-Ohio-4079, ¶ 115; *Smith* at 14. In short, the test for determining whether prosecutorial misconduct has occurred is "whether the conduct complained of deprived the defendant of a fair trial." *Fears* at 332. It is this consideration—rather than the culpability of the prosecutor—that forms the touchstone of the analysis. *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 155, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). With respect to determining whether a defendant was deprived of a fair trial, this Court must consider "the effect the misconduct had on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410 (1993). When the alleged misconduct takes the form of remarks made during closing argument, that argument must therefore be viewed in its entirety to determine whether prejudice resulted. *Id*.

{¶15} Mr. Frankowski has pointed to ten statements made by the State during closing argument that, by his estimation, constituted prosecutorial misconduct. He objected to only two of those statements and, consequently, has forfeited all but plain error with respect to the other eight. *See State v. Whitaker*, Slip Opinion No. 2022-Ohio-2840, ¶ 94, citing *State v. Slagle*, 65 Ohio St.3d 597, 604 (1992). This Court, however, must review those statements to which Mr. Frankowski did object in the context of the closing argument as a whole, *see Keenan* at 410, and "error * * * [is] the starting point for a plain-error inquiry." *See State v. Hill*, 92 Ohio St.3d 191, 200 (2001); Crim.R. 52(B). Accordingly, this Court considers Mr. Frankowski's arguments in turn. *See Keenan* at 410 (noting that although "[t]he defense did not object to most of the prosecutor's improper remarks * * * all such remarks are relevant" because a closing argument must be considered in its entirety).

{¶16} Mr. Frankowski's first, fifth, and eighth arguments relate to comments regarding the car fire that occurred the day of the incident. As discussed above, testimony regarding that incident provided necessary context for the charges at issue and was not other-acts evidence within the meaning of Evid.R. 404(B). During closing argument, the State is free to comment on properly admitted evidence even when the defendant has argued that admission of the evidence was error. *State v. Marshall*, 8th Dist. Cuyahoga No. 109633, 2022-Ohio-2666, ¶ 41. *See, e.g., State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 161. Moreover, Mr. Frankowski objected to the State's reference to the fire during closing argument, and the trial court instructed the jury that it was "not to consider [the fire] as a charged event" because it was "so * * * intrinsically connected to the burglary, that without evidence of it, the case would make no sense." The trial court continued:

> So you're to disregard and not assume, or presume, that [Mr. Frankowski] set fire to that. He's not charged with that offense. What he's charged with is the burglary offense. The fire is only for the purpose, and the testimony about that, is to show the surrounding circumstances, and you'll hear the connection between those

surrounding circumstances with the telecommunications evidence, with [Mr. Frankowski's] alleged location evidence to prove the burglary offense.

The State's remaining references to the fire during closing referred to the trial court's limiting instruction, incorporated aspects of it, or both. This Court cannot conclude that prosecutorial misconduct occurred in these instances.

{¶17} Mr. Frankowski's second and ninth arguments are that the State improperly accused him of deception and destruction of evidence during closing argument and commented that such behavior is characteristic of "criminals." If the evidence reasonably supports a characterization, it is not prosecutorial misconduct for the State to depict a claim made in the course of the defense as a lie. *State v. Baker*, 2d Dist. Greene No. 2004 CA 29, 2005-Ohio-45, ¶ 19. "A prosecutor may not state that the defendant is a liar, but 'may suggest that the evidence demonstrates the defendant is lying, scheming, or has ulterior motives.'" *State v. Nieves*, 8th Dist. Cuyahoga No. 111161, 2022-Ohio-3040, ¶ 50, quoting *State v. Irwin*, 7th Dist. Columbiana No. 11-CO-6, 2012-Ohio-2704, ¶ 116. *See also State v. Canterbury*, 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, ¶ 25-29.

{¶18} Mr. Frankowski's second argument relates to a statement that is more helpfully viewed within its context. The prosecutor summarized the evidence at trial with reference to the timeline of the incident at issue, noting that the testimony of the investigating officers and the victim differed from the testimony of C.L., who testified that she was with Mr. Frankowski on December 26th. The prosecutor also noted discrepancies between Mr. Frankowski's statements to police and the physical evidence that the officers observed. Within that context, the prosecutor said:

> Now, at that time [Mr. Frankowski] claims, "You know what? I don't have any boots. I don't know where my phone is. My computer tower is gone. I don't know where that is." He starts with this process of hiding evidence, destroying evidence,

> lying about evidence, and that's when it begins, because why else would he lie and say he doesn't have boots in the middle of winter in Ohio? That doesn't make sense. It doesn't make sense, and that's because [Mr. Frankowski] wasn't telling the truth.
>
> He also told the police that he doesn't have Size 13 shoes, that they're all Size 12. Well, what did the police find in [his] house? Size 13 shoes. They found one pair of Size 12 shoes that were slides that didn't have a heel on the back, but the rest were Size 13. And why would he lie about that? Because he's trying to cover up - - cover his tracks because he knows that that's evidence that puts him at the burglary, the footprints.

Viewed within its context, these statements were a fair comment on the evidence presented at trial and did not constitute prosecutorial misconduct. *See*, *e.g.*, *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, ¶ 186.

{¶19} In the same vein, courts have determined that prosecutorial misconduct does not necessarily occur when the state characterizes the defendant in unflattering terms during closing argument—particularly when the charges at issue relate to dishonesty. *See State v. Craig*, 6th Dist. Wood No. WD-20-034, 2021-Ohio-2790, ¶ 140-141, citing *State v. Houseman*, 7th Dist. Belmont No. 98 BA 4, 2000 WL 875336, *3 (June 29, 2000) and *State v. Green*, 67 Ohio App.3d 72, 80 (8th Dist.1990) (closing arguments depicted the defendants as a "scam artist," "a con * * * a fraud * * * a scam artist[,]" and "a fraud, a phony, and a liar[]" respectively).

{¶20} As with Mr. Frankowski's second argument, the statement that he attributes to prosecutorial misconduct in his ninth argument must be viewed within its context and with reference to the fact that he was indicted for tampering with evidence, aggravated theft, and telecommunications fraud. Commenting on testimony elicited by the defense that Mr. Frankowski disabled the location services function on radio equipment found in his possession, the prosecutor stated:

> So here's what happened, Ladies and Gentlemen - - and I don't know what he's talking about that the State didn't take him up on firing up the radio and looking at

> the location services. I didn't have to. I believe the location services was disabled, the function. I believe it a hundred percent. You know why? Because that's why he thinks he couldn't have got caught. He disabled it. Of course he disabled it. That makes so much more sense now.
>
> That's a great piece of evidence for the State. I was so happy when I heard that yesterday. I couldn't believe it. I couldn't believe they actually introduced that evidence.
>
> Yes, of course he did that. That's what criminals do. They don't want you to know where they're at. That makes sense, of course.

The prosecutor did not state directly that Mr. Frankowski *is* a criminal; rather, the prosecutor's statements offered comment on behavior typical of criminals and invited the inference that because the evidence indicated that Mr. Frankowski behaved in a certain way, he did what criminals do. In other words, the import of the statement at issue in this case is more attenuated than those at issue in *Craig*, *Houseman*, and *Greene*. Given that, as in those cases, Mr. Frankowski was charged with offenses that involved deception, this Court cannot conclude that this remark was improper.

{¶21} Mr. Frankowski's third and tenth arguments relate to statements suggesting that he introduced exhibits that had been altered from their original form. In his third argument, Mr. Frankowski points to the following statement:

> Now, throughout the course - - from December 26th to January 7th, [Mr. Frankowski] burglarized [C.M.], tried to hide the evidence, lied, deceived, culminating when he came into court today at this trial trying to enter into evidence altered documents.

This statement did not reflect an accusation, but a fair comment on the evidence as it developed during trial. As the State summarized during its rebuttal argument, the defense introduced a series of documents during C.M.'s cross-examination that purported to depict electronic communications between Mr. Frankowski and C.M. The documents had been provided to counsel by Mr. Frankowski. In the course of the cross-examination, C.M. testified that the documents did not appear to accurately reflect the substance of the communications. She verified the discrepancies

when she accessed some of the same communications from her smart phone. During a discussion on the record in chambers, the State informed the trial court that Mr. Frankowski had introduced the documents in a related proceeding, and that by comparing the two versions of the documents side by side, it became apparent that Mr. Frankowski's documents had, in fact, been modified. The second statement to which Mr. Frankowski points, which was made during the rebuttal argument, occurred in the context of a summary of the testimony surrounding the documents and was a fair response to the defense characterization of that testimony during closing argument. *See State v. King*, 12th Dist. Clermont No. CA2022-01-001, 2022-Ohio-3388, ¶ 50 ("[A] prosecutor's latitude in closing argument is wider on rebuttal where the prosecutor has room to respond to closing arguments of defense counsel.").

**{¶22}** Mr. Frankowski's fourth, fifth, sixth, seventh, and eighth arguments maintain that the State improperly attributed a burden of proof to him and suggested to the jury that he had failed to meet that burden. It is well-established, however, that the State may comment on a defendant's failure to offer evidence that supports his case without implying that the burden of proof has shifted to the defense. *State v. Collins*, 89 Ohio St.3d 524, 527-528 (2000). "Such comments do not imply that the burden of proof has shifted to the defense, nor do they necessarily constitute a penalty on the defendant's exercise of his Fifth Amendment right to remain silent." *Id.* For this reason, the state is not prohibited from arguing that a defendant failed to produce evidence that supported the defense theory of the case. *Chagrin Falls v. Ptak*, 8th Dist. Cuyahoga No. 109342, 2020-Ohio-5623, ¶ 56; *State v. Encarnacion*, 10th Dist. Franklin No. 16AP-817, 2017-Ohio-5530, ¶ 16. *See, e.g.*, *State v. Merriweather*, 12th Dist. Butler No. CA2016-04-077, 2017-Ohio-421, ¶ 54-55.

**{¶23}** During his opening statement, Mr. Frankowski's trial counsel stated the defense theory of the case explicitly:

The burglary charge, you're going to conclude, is the centerpiece of this case. Okay? Here's the only thing I can tell you about that. We're going to prove - - this is kind of going out on a limb. We're going to prove that she - - [C.M.] - - staged that burglary and that fire.

Yes. I think when you're done, when all is said and done, when you pull all this evidence together - - we're going to tell you about a relationship that started in October of 2017 between these two * * * and it went through the end of 2020 when this event happened, and I'm going to paint a picture for you through evidence of some critical months when the wheels started to fall off. Okay? October, November, and December of 2020.

* * *

What happened in this relationship October, November, and December that caused her to stage these shocking events? For someone to * * * break in her apartment and put some letters on her desk and start a fire where she continues to play softball after the fire, that's all I'll say about that.

Again, evidence is going to come in. The picture's going to be painted for you, and I think after you put together the picture, all the evidence, I think you're going to see so clearly her motive to do this based on her character, based on what she did throughout this time.

And I'm not here to beat her up, believe me. I'm here to get at the truth of what she did. That's all.

And I'm confident that after you see all this stuff, you're going to conclude, shockingly enough, that she staged this. There's way more evidence in this case that she staged it as opposed to [Mr. Frankowski] did it.

Under these circumstances, when trial counsel "announce[s] * * * the primary thrust of their argument at trial" during opening statements, the State is permitted to comment on the weaknesses in the evidence supporting the defendant's theory of the case. *See State v. Davis*, 12th Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 33. This Court cannot conclude the State's comments in this case were improper.

{¶24} Mr. Frankowski also maintains that the cumulative effect of the alleged instances of prosecutorial misconduct during closing argument deprived him of a fair trial. *See generally State v. McAlpin*, Slip Opinion No. 2022-Ohio-1567 at ¶ 187-188. Having reviewed each of the

statements to which Mr. Frankowski objects in the context of the entire argument and the trial as a whole, this Court cannot agree.

**{¶25}** Mr. Frankowski's second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

**{¶26}** Mr. Frankowski's third assignment of error argues that his conviction for the lesser included offense of burglary is not supported by sufficient evidence that he had a purpose to commit a criminal offense. This Court does not agree.

**{¶27}** "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proved beyond a reasonable doubt. *Id*.

**{¶28}** Mr. Frankowski was convicted of the lesser-included offense of burglary in violation of R.C. 2911.12(A)(3), which prohibits any person, "by force, stealth, or deception," from "[t]respass[ing] in an occupied structure * * * with purpose to commit in the structure * * * any criminal offense." R.C. 2911.12(A)(3) requires the State to demonstrate that a defendant trespassed in an occupied structure "for the purpose of committing a crime or that he formed that

intent during the trespass." *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 33, citing *State v. Fontes*, 87 Ohio St.3d 527 (2000), syllabus. Because burglary requires the *intent* to commit a criminal offense while trespassing in an occupied structure, the commission of a criminal offense is not necessarily required. *State v. Justice*, 8th Dist. Cuyahoga No. 106895, 2018-Ohio-4119, ¶ 11. "'In short, a burglary is complete upon the defendant entering the premises with the intent to commit a crime therein.'" *Id.*, quoting *State v. Yancey*, 8th Dist. Cuyahoga No. 104587, 2017-Ohio-1040, ¶ 9. "[A] person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts[,]" and intent must be proved with reference to the surrounding circumstances because, in most cases, it cannot be proved by direct evidence. *State v. Lott*, 51 Ohio St.3d 160, 168 (1990).

{¶29} The State's theory of this case was that Mr. Frankowski trespassed into C.M.'s apartment with the intention to commit criminal mischief or criminal damaging. Criminal mischief is prohibited by R.C. 2909.07(A)(1)(a), which provides that "[n]o person shall * * * without privilege to do so, knowingly move, deface, destroy, or otherwise improperly tamper with * * * [t]he property of another[.]" R.C. 2909.06(A)(1), which prohibits criminal damaging, prohibits knowingly causing or creating a substantial risk of physical harm to the property of another by any means and without consent. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to property" is "any tangible or intangible damage to property that, in any degree, results in loss to its value or interferes with its use or enjoyment." R.C. 2901.01(A)(4).

{¶30} Officer Michael Dominguez, who responded to the break-in at C.M.'s apartment, described what he saw when he entered. He noted that the lock on the front door had been "drilled

out" and the door itself had been kicked in, leaving broken pieces of the door frame strewn about the apartment. Officer Dominguez also observed that the Christmas tree had been overturned. During her own testimony, C.M. noted that there were new marks and scratches on the deadbolt lock, that the floor was littered with pieces of wood, and that the family's Christmas gifts were in disarray, although she had left them neatly arranged.

{¶31} Viewing the evidence at trial in the light most favorable to the State, a jury could reasonably conclude beyond a reasonable doubt that Mr. Frankowski trespassed in C.M.'s apartment with the intent to knowingly "deface, destroy, or improperly tamper with" her property in violation of R.C. 2909.07(A)(1)(a) or to cause or create a serious risk of physical harm to C.M.'s property without her consent in violation of R.C. 2909.06(A)(4). Mr. Frankowski's conviction for burglary is supported by sufficient evidence, and his second assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 3

> MR. FRANKOWSKI'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶32} In his fourth assignment of error, Mr. Frankowski maintains that his conviction for burglary is against the manifest weight of the evidence. Specifically, Mr. Frankowski maintains that when the evidence identified in his first assignment of error is excluded from consideration, there is no credible evidence that he is the person who trespassed in C.M.'s apartment.

{¶33} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶34} C.M. testified that she played in an indoor softball tournament in Lake County on December 26, 2020. She noted that Mr. Frankowski was probably aware that she would be there because they had participated together in the past and he had asked whether she would be involved again. According to C.M.'s testimony, she arrived at the tournament site around 10:00 a.m. At approximately 6:00 p.m., she learned from other players that a car was burning in the parking lot. When C.M. saw that it was her car, she called the Brunswick Hills Police Department and asked them to keep an eye on her residence. Left without a drivable vehicle, C.M. remained at the tournament after friends encouraged her to keep playing to keep her mind off of the day's events.

{¶35} In the meantime, Officer Michael Dominguez was dispatched to the apartment complex where C.M. lived. He testified that he arrived near sunset, parked in an area facing her apartment, and positioned himself so that he could see anyone who approached from the entrance to the development. Officer Dominguez watched the area for thirty to sixty minutes, but had to leave at that point because other calls for service came in. An hour or two after he left, however, a neighbor called the police to report that someone was attempting to break into C.M.'s apartment by drilling out the lock. C.M., who was still participating in the softball tournament, also received a notification on her phone from a smart camera mounted near the back door of her apartment. She testified when she watched the live video feed, she saw Mr. Frankowski leaving her apartment through the patio door, and she explained that she recognized him by his clothing, gait, and mannerisms. C.M. also called the police to report the break-in.

{¶36} Officer Dominguez responded to the calls with Sergeant James Sanford. Officer Dominguez testified that while Sergeant Sanford secured the apartment, he followed a trail of footprints that led from the open rear patio door through the snow. When he reached the end of the footprints without locating a suspect, he returned to the apartment. Sergeant Sanford explained that the footprints measured about the length of a size-thirteen men's boot. He also testified that C.M. forwarded the video from the security camera to him and pointed out that a voice—which C.M. identified as Mr. Frankowski—could be heard on the recording. Police went to Mr. Frankowski's residence after leaving C.M.'s apartment, but according to Sergeant Sanford, the house was mostly dark and no one responded when they repeatedly knocked and announced their presence.

{¶37} Sergeant Sanford returned to the apartment with C.M. the following day. At that time, C.M. noticed that decorative letters reading "DCBO" had been arranged on the television stand. During her testimony, C.M. explained that Mr. Frankowski had used those letters, which represented their initials and the initials of her children, to communicate his desire for the four of them to be a family unit in the past. Sergeant Sanford obtained a warrant to search Mr. Frankowski's residence, where police located a drill and drill bits similar to the one that had been used to drill the lock on C.M.'s apartment. Sergeant Sanford testified that all of the shoes that were found in the house were a men's size thirteen with the exception of one pair of slides in a size twelve. No boots were identified in the residence, but C.M. testified that Mr. Frankowski owned a pair of Merrell boots. Police also found numerous items of computer and radio equipment in Mr. Frankowski's residence.

{¶38} Sergeant Sanford testified that he obtained Mr. Frankowski's mobile phone when he came to the police station several days after the incident. He also testified, however, that shortly

after Mr. Frankowski was arrested, he gave directions for erasing the contents of his phone to a female during a conversation on a recorded telephone line. C.L., Mr. Frankowski's former girlfriend, was identified as the female. When police attempted a forensic examination of the mobile phone, they found that it had, in fact, been reset. As a result, no data could be recovered from it. Sergeant Sanford testified that during subsequent searches of Mr. Frankowski's car and C.L.'s residence, they found another laptop computer and two public safety radios. Location data associated with unique identifiers found on one of the radios was consistent with movement from Medina County north through Cuyahoga County, into Lake County, and back to Medina County on December 26, 2020, in a pattern consistent with the timeline set forth in C.M.'s testimony and the testimony of Officer Dominguez.

{¶39} C.L., who testified in Mr. Frankowski's defense, maintained that she was with him all day on December 26th except for a brief period of time in the middle of the day. According to her testimony, she and Mr. Frankowski were patching drywall in a bathroom at his residence throughout the day and into the evening. Despite Sergeant Sanford's testimony that police knocked and announced their presence multiple times, C.L. denied that she heard the police arrive at Mr. Frankowski's home. She pointed to video footage obtained from Mr. Frankowski's home security system as proof of her presence there, but that footage did not capture the arrival of the police at the home although recorded at approximately the same time. Although C.L. testified that she and Mr. Frankowski were playing loud music while they worked, Sergeant Sanford testified that the house was quiet and dark. He also observed that no recent drywall repair appeared to have been done in the bathroom when police executed the search warrant. C.L. also acknowledged that her goal was to help Mr. Frankowski in any way that she could and that they had spoken daily since his arrest.

{¶40} The essence of Mr. Frankowski's manifest weight argument is twofold: he maintains that the evidence tying him to the offenses is circumstantial and that there is no physical evidence that connects him to the crimes. As with any element of an offense, however, identity may be proved by direct or circumstantial evidence, which do not differ with respect to probative value. *See State v. Flynn*, 9th Dist. Medina No. 06CA0096-M, 2007-Ohio-6210, ¶ 12. *See also State v. Treesh*, 90 Ohio St.3d 460, 485 (2001), citing *Jenks* at paragraph one of the syllabus. Similarly, physical evidence in the form of scientific testimony is not required to obtain a conviction. *State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 56, citing *State v. Finley*, 2d Dist. Montgomery No. 19654, 2004-Ohio-661, ¶ 31-36.

{¶41} Given the evidence at trial, we cannot conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. *See Otten*, 33 Ohio App.3d at 340, citing *Martin*, 20 Ohio App.3d at 174. Mr. Frankowski's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. 5

TRIAL COUNSEL WAS INEFFECTIVE, AND THE TRIAL COURT ERRED, WHEN EITHER PARTY FAILED TO SEEK THE LESSER INCLUDED OFFENSE OF CRIMINAL TRESPASS WHEN THE COURT INDICATED THAT A LESSER INCLUDED OFFENSE WAS PROPER BASED ON THE EVIDENCE.

{¶42} In his fifth assignment of error, Mr. Frankowski maintains that because the evidence was insufficient to support his conviction for burglary, the trial court erred by failing to instruct the jury on the lesser included offense of criminal trespassing. Mr. Frankowski did not request this instruction at trial, so he is limited to arguing plain error in this appeal. *See* Crim.R. 52(B).

{¶43} R.C. 2945.74 permits a defendant to be found guilty of a lesser included offense of the offenses charged in an indictment. *See also State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-

2974, ¶ 8, quoting *State v. Smith*, 121 Ohio St.3d 409, 2009-Ohio-787, ¶ 14. "'[I]f the evidence is such that a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense, then the judge should instruct the jury on the lesser included offense.'" *Evans* at ¶ 13, quoting *Shaker Hts. v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, ¶ 11; *State v. Thomas*, 40 Ohio St.3d 213, 216 (1988).

{¶44} In this case, the trial court gave the jury a lesser included instruction for burglary, "which is a more serious offense than criminal trespass, but a less serious offense than aggravated burglary." *State v. Hartman*, 9th Dist. Medina Nos. 10CA0026-M, 10CA0031-M, 2012-Ohio-745, ¶ 14. *See also State v. Snyder*, 9th Dist. Summit No. 25157, 2011-Ohio-175, ¶ 23. In essence, Mr. Frankowski argues that the trial court erred by instructing the jury on burglary instead of criminal trespass because the evidence would reasonably support an acquittal on burglary in violation of R.C. 2911.12(A)(3) and a conviction for criminal trespass in violation of R.C. 2911.21(A)(1). More specifically, Mr. Frankowski appears to argue that the evidence would reasonably support an acquittal on the burglary charge because, as he maintains in his third assignment of error, there was insufficient evidence that he had the intent to commit a criminal offense while trespassing in an occupied structure.

{¶45} As this Court has concluded, there was sufficient evidence to establish that Mr. Frankowski had the intent to do so. In considering whether a defendant is entitled to an instruction on a lesser included offense, however, this Court must view the evidence in the light most favorable to the defendant. *State v. Ivery*, 9th Dist. Summit No. 28551, 2020-Ohio-3349, ¶ 31, citing *State v. Powe*, 9th Dist. Summit No. 21026, 2002-Ohio-6034, ¶ 58. Having reviewed the evidence from that perspective, this Court concludes that the evidence presented at trial would not reasonably permit the jury to find that Mr. Frankowski lacked the intent to commit a criminal offense when

he trespassed in C.M.'s apartment. Accordingly, the trial court did not err by failing to instruct the jury on the lesser included offense of criminal trespass. Because "error * * * [is] the starting point for a plain-error inquiry[,]" Mr. Frankowski's argument is not well taken. *See Hill*, 92 Ohio St.3d at 200. *See also Ivery* at ¶ 29, quoting *State v. Proctor*, 9th Dist. Summit No. 26740, 2013-Ohio-4577, ¶ 4 ("'There are three requirements to finding plain error. First, there must be an error.'").

{¶46} Mr. Frankowski has also argued that because his attorney did not request a lesser included offense instruction regarding criminal trespass, he received ineffective assistance of counsel. Mr. Frankowski has not separately argued this error as required by App.R. 12(A)(2) and App.R. 16(A)(7). Nonetheless, given this Court's conclusion that the trial court did not err with respect to the lesser included offense instruction, his ineffective assistance argument fails as well. *See generally Strickland v. Washington*, 466 U.S. 668, 694 (1984) (holding that a defendant must demonstrate prejudice by showing that, but for counsel's error, there is a reasonable possibility that the outcome of the trial would have been different).

{¶47} Mr. Frankowski's fifth assignment of error is overruled.

III.

**{¶48}** Mr. Frankowski's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

―――――

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

SUTTON, J.
CONCURS.

CARR, P. J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

MEGAN M. PATITUCE and JOSEPH C. PATITUCE, Attorneys at Law, for Appellant.

S. FORREST THOMPSON, Prosecuting Attorney, and VINCENT V. VIGLUICCI, Assistant Prosecuting Attorney, for Appellee.