[Cite as *State v. Novack*, 2026-Ohio-27.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | | C.A. No. 31140 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| RONALD P. NOVACK | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2023-07-2540 |

DECISION AND JOURNAL ENTRY

Dated: January 7, 2026

STEVENSON, Presiding Judge.

**{¶1}** Defendant-Appellant, Ronald Novack, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** Shortly before 4:45 a.m., A.M. began receiving calls and messages from Mr. Novack, the paternal grandfather of her two children. A.M. did not respond to Mr. Novack's attempts to contact her. Even so, he arrived at her house about thirty minutes after his first call. Ring doorbell footage captured him parking his motorcycle on the sidewalk in front of the house and pacing in front of the house. At the time, A.M. was in bed alongside her two children.

**{¶3}** Mr. Novack entered A.M.'s home through the living room window and took off his motorcycle chaps and jacket. He entered her bedroom, touched her shoulder, and began speaking with her. Mr. Novack disregarded A.M.'s instructions to leave. While inside her bedroom, he

used drugs and offered them to A.M. He also laid across her leg. A.M. later noticed a stain on the hip area of her shorts in the spot where Mr. Novack's groin had touched her.

{¶4} A.M. was able to contact a friend for help, and the friend arrived about fifteen minutes later with her boyfriend. Mr. Novack hid under A.M.'s bed when they arrived but fled when they looked for him and called 911. He took a knife from A.M.'s house and tried slashing the tire of the friend's car before escaping on his motorcycle. The police found Mr. Novack's chaps, his jacket, and his bookbag inside A.M.'s house.

{¶5} Mr. Novack was indicted on one count of burglary. A jury found him guilty, and the trial court sentenced him to an indefinite prison term of three to four and one-half years.

{¶6} Mr. Novack now appeals from his conviction and raises two assignments of error for our review. For ease of review, we rearrange the assignments of error.

II.

**ASSIGNMENT OF ERROR II**

**MR. NOVACK'S CONVICTION FOR BURGLARY IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.**

{¶7} In his second assignment of error, Mr. Novack argues his burglary conviction is against the manifest weight of the evidence. We disagree.

{¶8} When considering a challenge to the manifest weight of the evidence, this Court is required to consider the entire record, "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). "A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction." *State v. Croghan*, 2019-Ohio-3970, ¶ 26 (9th Dist.).

**{¶9}** Mr. Novack was charged with burglary in violation of R.C. 2911.12(A)(1). That statute prohibits any person, "by force, stealth, or deception," from "[t]respass[ing] in an occupied structure . . . with purpose to commit in the structure . . . any criminal offense[.]" R.C. 2911.12(A)(1). "Because burglary requires the *intent* to commit a criminal offense while trespassing in an occupied structure, the commission of a criminal offense is not necessarily required." (Emphasis in original.) *State v. Frankowski*, 2023-Ohio-110, ¶ 28 (9th Dist.).

**{¶10}** A.M. testified that she was asleep in bed with her two children when she began receiving phone calls and messages from Mr. Novack. She identified him as her children's paternal grandfather but maintained that she had no contact or relationship with him. Screenshots taken from her phone showed that Mr. Novack called her seven times, beginning at 4:41 a.m. and ending at 5:10 a.m. He also sent her two messages. In the first message, he asked her to pick up the phone so he could ask her a question. In the second message, he asked her whether he could "stop for 5 minutes and charge [his] phone . . . ." A.M. testified that she did not answer his calls or respond to either of his messages. She testified that she found him "weird" and that he was not welcome at her house.

**{¶11}** A.M. testified that she heard a motorcycle pull up outside her house around 5:10 a.m. She then checked the Ring doorbell app on her phone and recognized Mr. Novack. She watched as he paced around outside. She testified that he eventually entered her home through her living room window. In doing so, he climbed over a child who was staying with A.M. and sleeping on the couch. After entering the home, Mr. Novack made his way to A.M.'s bedroom.

**{¶12}** A.M. testified that Mr. Novack entered her room, hovered over her bed, tapped her shoulder, and began whispering to her. She testified that he frightened her, and she told him to leave before he woke the children. A.M. admitted that Mr. Novack said he wanted to charge his

phone. Even so, she said that he ignored the charger when she pointed out its location on the other side of the room. According to A.M., Mr. Novack continued talking and offered to help her with money since his son was not providing for the children. She testified that he then pulled out a bag of drugs. A.M. stated that Mr. Novack took the drugs and asked if she wanted some because "he knew [she] liked to party . . . ." She testified that she declined.

{¶13} A.M. stated that Mr. Novack continued to hover over her and, at one point, lay across her leg. While doing so, he told her not to say anything and to quiet down so the kids would not wake up. A.M. testified that she was wearing shorts and was not under a blanket. Although she did not glance down while Mr. Novack was lying on her, she testified that she later noticed a stain on her shorts in the area of her hip. She testified that the stain came from Mr. Novack's "privates."

{¶14} A.M. testified that she was able to use her phone to message a close friend who was the mother of the child sleeping in the living room. The State introduced copies of the messages at trial. In the messages, A.M. begged for help, explained that Mr. Novack had broken in, and shared that she was afraid he was going to rape her. The friend and the friend's boyfriend arrived shortly thereafter.

{¶15} A.M. and the friend both testified that, when the friend and her boyfriend arrived, Mr. Novack hid under A.M.'s bed. As the friend called 911, Mr. Novack fled and grabbed a knife from the kitchen. The friend testified that he came outside with the knife and got onto his motorcycle. When the friend tried to block his path with her car, Mr. Novack stabbed at her tire with the knife and rammed her car with his motorcycle. He successfully escaped but left several of his possessions inside A.M.'s house. Specifically, he left his motorcycle chaps, his jacket, and

a bookbag. The chaps and jacket were found in A.M.'s living room, and the bookbag was found inside her bedroom.

{¶16} The friend testified that she and A.M. had a very close relationship and had known each other for A.M.'s entire life. The friend testified that A.M. did not have a relationship with Mr. Novack. She testified that he "[gave] off creepy vibes" and was not welcome at A.M.'s house or around the children.

{¶17} Officer Jerry Kovach testified that he was dispatched to A.M.'s house and arrived two hours after the incident. He testified that A.M. said she had received messages from Mr. Novack before he came to her house. He testified that A.M. described waking up to find Mr. Novack touching her leg. He could not recall her telling him about a stain on her shorts. Officer Kovach confirmed that he collected items of clothing and a bookbag that Mr. Novack had left inside A.M.'s residence.

{¶18} Mr. Novack argues that his burglary conviction is against the manifest weight of the evidence because A.M.'s testimony was "vague, uncertain, conflicting, and illogical." While A.M. claimed not to associate with him, Mr. Novack notes that she repeatedly called him "Ronnie" on the stand rather than using his formal name. He also notes that there was conflicting testimony as to whether she was asleep or awake when he came into her bedroom. While A.M. testified that she was awake, Officer Kovach recalled her saying that Mr. Novack woke her when he touched her. Finally, Mr. Novack argues that there was no evidence to corroborate A.M.'s claim that he left a stain on her shorts. He notes that Officer Kovach did not even recall A.M. mentioning the alleged stain. Because A.M. was not consistent in her accounts, Mr. Novack argues the jury lost its way when it chose to believe her testimony.

{¶19} Having reviewed the record, we cannot conclude that this is the exceptional case where the evidence weighs heavily against Mr. Novack's conviction. *See Croghan*, 2019-Ohio-3970, at ¶ 26 (9th Dist.). The State set forth a substantial amount of evidence to corroborate A.M.'s version of the events including screenshots of the calls and messages she received from Mr. Novack, Ring doorbell footage of his arrival and actions outside her home, screenshots of the messages A.M. sent to her friend, the friend's testimony about Mr. Novack's actions upon her arrival, and the personal items Mr. Novack left inside A.M.'s house when he fled. Mr. Novack relied on cross-examination, and thus, did not present conflicting testimony. To the extent A.M.'s version of the events contained some inconsistencies, the jury was in the best position to assess her credibility. *See State v. Briggs*, 2025-Ohio-1966, ¶ 17 (9th Dist.). "This Court will not overturn a verdict on a manifest weight challenge simply because the jury chose to believe the State's version of the events." *State v. Harris*, 2024-Ohio-196, ¶ 19 (9th Dist.). The inconsistencies Mr. Novack claims are not so striking to establish this is an exceptional case in which the evidence weighs heavily against the conviction. Because Mr. Novack has not shown that the jury lost its way by convicting him, we reject his manifest weight argument. His second assignment of error is overruled.

## ASSIGNMENT OF ERROR I

**RONALD NOVACK'S CONVICTION FOR BURGLARY VIOLATED HIS RIGHT TO A UNANIMOUS JURY VERDICT.**

{¶20} In his first assignment of error, Mr. Novack argues that his burglary conviction must be vacated because (1) it is unclear whether the jury unanimously agreed which of three criminal offense he intended to commit during the course of the burglary, and (2) the State failed to present substantial evidence in support of two of those offenses. For the following reasons, we reject his argument.

{¶21} Mr. Novack acknowledges that he did not raise his argument in the lower court. He argues that plain error occurred when the trial court accepted the jury's verdict. *See* Crim.R. 52(B) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). "'To establish plain error, one must show (1) an error occurred, i.e., a deviation from a legal rule, (2) the error is plain, i.e., an obvious defect in the proceedings, and (3) the error affected a substantial right, i.e., affected the outcome of the proceedings.'" *State v. Berila*, 2020-Ohio-3523, ¶ 43 (9th Dist.), quoting *State v. Grant*, 2019-Ohio-3561, ¶ 5 (9th Dist.). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶22} Crim.R. 31(A) requires unanimity in criminal verdicts. Nevertheless,

"[a] defendant charged with burglary is not deprived of a unanimous verdict simply because the jury was not required to agree unanimously as to the nature of the crime the defendant intended to commit at the time he entered unlawfully into the victim's building. In situations where the alternatives of the mens rea [intent] component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct."

(Cleaned up.) *State v. Fry*, 2010-Ohio-1017, ¶ 123, quoting *State v. Gardner*, 2008-Ohio-2787, ¶ 68. The burglary conviction may stand "so long as substantial evidence supports each alternative means." *Gardner* at ¶ 49, quoting *State v. Jones*, 96 Hawai'i 161, 170 (2001). "[T]he state must prove the defendant's intent to commit a crime – 'any criminal offense' – beyond a reasonable doubt." *Gardner* at ¶ 72.

{¶23} Although the Supreme Court did not expressly equate the "substantial evidence" standard with a sufficiency review in *Gardner*, it later revisited the "substantial evidence" standard in *State v. Adams*, 2015-Ohio-3954. *Adams* concerned a capital specification and four alternative

means by which the defendant could have committed a predicate offense in support of that specification. *Adams* at ¶ 273. After citing the "substantial evidence" standard from *Gardner*, the Supreme Court reviewed each alternative means for sufficient evidence to determine if a rational trier of fact could have found each proven beyond a reasonable doubt. *Id.* at ¶ 275-287. The Supreme Court ultimately concluded that, because the State had failed to set forth sufficient evidence to prove all elements of one alternative means beyond a reasonable doubt, the capital specification had to be vacated. *See id.* at ¶ 288, 300. Mr. Novack cites *Adams* in support of his argument.

{¶24} Mr. Novack's burglary conviction required the State to prove that he used force, stealth, or deception to trespass in an occupied structure "with purpose to commit in the structure . . . any criminal offense." R.C. 2911.12(A)(1). The State offered three distinct criminal offenses as alternative means by which Mr. Novack could have committed the intent element of the offense. Specifically, the State argued that he unlawfully entered A.M.'s home for the purpose of committing sexual imposition, aggravated possession of drugs, or theft. The jury was instructed on each of those offenses. Mr. Novack concedes there was enough evidence to support the conclusion that he intended to commit a theft (i.e., by taking a knife from A.M.'s home). He argues that there was insufficient evidence to support the two other alternative means upon which the State relied. Thus, he argues that this Court must vacate his conviction. *See Gardner* at ¶ 49, quoting *Jones* at 170 (unanimity is not required in an alternative means case "so long as substantial evidence supports each alternative means").

{¶25} Assuming without deciding that the "substantial evidence" standard is the functional equivalent of a sufficiency review, we cannot conclude that plain error occurred when the trial court accepted the jury's guilty verdict. As previously noted, the jury heard A.M. testify

that Mr. Novack used drugs from a bag and asked her if she wanted some because "he knew [she] liked to party . . . ." They also heard testimony that he hovered over her in bed, laid across her leg, told her not to wake the children, and left a stain on her shorts in the area of her hip. Based on A.M.'s testimony, a rational trier of fact could have concluded that the State proved, beyond a reasonable doubt, that Mr. Novack intended to commit the crime of aggravated possession of drugs and sexual imposition. Importantly, burglary only requires the *intent* to commit a criminal offense, and "the commission of a criminal offense is not necessarily required." *Frankowski*, 2023-Ohio-110, at ¶ 28 (9th Dist.). Because the State satisfied its burden regarding each of the alternative means it proposed as proof of the intent element of Mr. Novack's burglary offense, we reject his argument that plain error occurred. Mr. Novack's first assignment of error is overruled.

### III.

{¶26} Mr. Novack's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

___

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, J.
SUTTON, J.
CONCUR.

APPEARANCES:

MELISSA SEABOLT, Assistant Public Defender, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.